## BROOKS *v.* CLAIBORNE COUNTY.

1. COUNTY COURT. *Majority vote necessary. When. Appropriation of money.* A majority of the justices of the county voting in the affirmative is required to make an appropriation of money over fifty dollars.

   Code cited: Sec. 4190.

   Act cited: 1835, ch. 6.

2. SAME. *Parol proof. Not admissible to contradict the record. When.* Parol testimony is not admissible to contradict the minute records of the proceedings had at a meeting of the court.

3. SAME. *Organization and business of county court.* Sec. 4195 of the Code requiring the ayes and noes to be taken and entered upon the minutes when appropriations of money are being voted is not imperative, but directory merely. The court say it, however, is an important one, and should never be omitted by the clerk.

   Code cited: Secs 4195, 4180.

---

### FROM CLAIBORNE.

---

Appeal from the Circuit Court.

ROSE for plaintiff.

No brief for defendant.

SNEED, J., delivered the opinion of the court.

The action is upon an instrument executed by the Chairman of the County Court of Claiborne county, purporting to be a county bond, and to have been executed by authority of the County Court of said county. The instrument purports to bind the County of Claiborne to pay to H. Sturm or order five thous-

and dollars on the 1st of January, 1870, with interest at the rate of six per cent. per annum until paid, and bears date 7th April, 1868. The suit is brought in the name of the assignee in bankruptcy of certain parties to whom the original payee had assigned the bond.

The County Court of said county had contracted with J. H. Sturm for the building of a court-house, and as the work was approximating its completion, the County Court, at its April term, 1868, in quarterly session, appropriated to said Sturm the sum of ten thousand dollars in part payment for the work, and the bond sued on, and another for a like amount, were issued by the chairman as an evidence of said debt. The bond first falling due has been paid by special order of the court at his January term, 1869. This order or decree, rendered by a competent court, as shown by the caption at the January term, 1869, was in the words following:

"It was this day ordered by the court that Benj. Ansmus, Revenue Collector of Claiborne county, be permitted to examine and investigate the payment or transfer of certain county bonds issued in favor of J. H. Sturm, and whether or not said bonds have been paid, transfered, or assigned to any party for a full and valid consideration before the 7th July, 1868, and if so the said Ansmus, as revenue collector, be allowed to pay over or deposit whatever funds he may have on hand collected for that purpose to the person or persons holding the legal and lawful possession of said banks. But should the bonds have been enjoined

before or since the above date, then the money so collected, and in the hands of said revenue collector, will be deposited with the Clerk of the Chancery Court at Knoxville, taking his receipt therefor."

The said Ansmus, being the collector of the tax levied to pay for the building of the court-house, proceeded, under this order, to obey it, and did pay one of the aforesaid bonds, or most of it, which he found in one of the banks at Knoxville. The payment of the other bond sued on in this action is resisted by the county upon divers grounds. No question is made upon the *bona fides* of the transaction between the contractor Sturm and the county touching the performance of the contract, but so far as the record advises us no complaint is made on that score; but it seems the county has accepted the work, and is now occupying the building.

It is contended that the appropriation of ten thousand dollars at the April term, 1868, was illegal and unauthorized, for the want of a competent court to make it. The statute upon this subject is as follows: " A majority of all the magistrates of the county is required to levy a tax or to appropriate public money to an amount over fifty dollars." Code, sec. 4190.

It appears that there were at the time twenty-six justices in the county, and the caption of the court on the day of the appropriation shows that there were twenty of said justices present, but the record does not show how many voted for the appropriation. The clerk states that the ayes and noes were called upon the question of this appropriation, but the record does

not show this fact.     The further facts are shown also that only eleven of the justices signed the minutes of the said April term.

It· seems there was some opposition to the appropriation, and the judge below allowed parol testimony to be heard to establish the fact that there was not a majority of the justices present at the time the order for the appropriation was made.     Upon this question the testimony was conflicting, some swearing that at that time there was a majority present, and others testifying to the contrary.     It was error in the court thus to permit the record, to be contradicted by parol over the objection of the plaintiff, and perhaps there could be no better illustration of the wisdom of the rule that the record must be its own witness than this case affords.

The court held, also, that the· provision of the Code, sec. 4195, requiring the ayes and noes to be taken and entered on the minutes upon voting appropriations of money, was imperative, and the failure of the clerk to do it would vitiate the order.     In this, also, we think the court was in error.     We hold that this provision is directory merely, but it is an important one nevertheless, and should never be omitted by the clerk. It would be a harsh rule that would forfieit the just demand of an innocent party for a mere misprision of this· character.     An old act (1829, ch.) would seem to sustain the defendant's view of this question, but the words or substance of that act are not carried into the Code, or any subsequent acts upon the subject.     The act referred to forbade the county trustee

Brooks *v.* Claiborne County.

from paying any warrant unless this provision as to ayes and noes was strictly complied with. If the record shows that by a competent court the order was passed, the debt and demand was thereby created and acknowledged, and the creditor could not be deprived of it by this mere clerical omission.

As we see no positive error in the charge of the court upon the doctrine of ratification, as applied both to the original appropriation and the evidence of it in the bond sued on, we do not feel called upon to discuss the effect of the proceedings of January term, 1869, recognizing the action of April term, 1868, and the evidence of indebtedness issued under it. It remains thus to enquire what is the meaning of the words of the statute already quoted, that a majority of all the magistrates of the county is required to levy a tax or appropriate public money to an amount over fifty dollars? Does it mean that a majority of the magistrates of the county must be present, and voting for the appropriation, or does it mean that a majority of the magistrates of the county is necessary to constitute a court with power to make appropriations of that amount. We think the first is the correct interpretation. The county court is in a certain sense a legislative as well as a judicial body. In the appropriation of the public money it is acting in a *quasi* legislative as well as a judical capacity. It is a representative body of the people who pay the taxes. But it is a judicial tribunal also, with exclusive jurisdiction of this subject of county appropriations for county purposes. It was intended, however, that in

the exercise of this important power, improvident ac-
tion should be guarded against by requiring that the
court itself should be composed of a majority of the
justices, so that a representation of a majority of the
people should be secured.    The power of the court
being both judicial and legislative, its proper exercise
must be assimilated to the usual mode of exercising
powers under our system, where it is done by popular
or representative vote.    A majority of the court must
control the court in all cases, unless some certain
number be prescribed.    The provision that a majority
of all the magistrates of the county is required to
levy a tax, or appropriate public money to an amount
over fifty dollars, is found in the chapter of the Code
regulating the organization and business of the county
court, and it follows after a provision (sec. 4180) in
these words: "It (the connty court) is divided into a
quarterly and a quorum court, the first being held by
all or *any number of justices necessary to transact busi-
ness*, the latter by any three or more of the justices."
It is certain that no more important function belongs
to this tribunal than the levying of taxes and the
appropriation of money.    There are many of its func-
tions in which only a small minority of the people
have any direct interest, but in these matters of taxa-
tion and appropriation every taxpayer is directly con-
cerned, and hence the policy of throwing around this
power the strongest safeguards to prevent an improvident
exercise of it.    A majority of the justices of the county
would represent a majority of the people of the county,
while a majority of a court, though the court be composed

of a majority of the magistrates of the county, might represent a minority of the people.

We hold that the proper construction of the statute is that a majority of the justices of the county voting in the affirmative is required to make an appropriation of the amount in controversy, and we are fortified in this conclusion by the provision of the act of 1835, c. 6, under which the county courts were reorganized under the Constitution of 1834, which act required, for these purposes, a majority of the magistrates of the county voting in the affirmative. It results, that the ruling of his honor, the circuit judge, on this question, in the opinion of this court, was correct, but for the other errors indicated the plaintiff must have a new trial.

Reverse the judgment and remand the cause.